**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

VICTORIA BALBRIDGE,

        Plaintiff,

v.                                    Case No. 07-CV-15130-DT

TYLER JEFFREYS, et al.,

        Defendants.

_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pending before the court is a motion for summary judgment, filed on December 1, 2008 by Defendants Daniel Heyns, David Luce, Kevin Stellingworth, Jackson County, and Jackson County Sheriff's Department.[1]  This motion has been fully briefed and the court concludes a hearing is unnecessary.  *See* E.D. Mich. LR 7.1(e)(2).  For the reasons stated below, the court will grant the motion.

**I.  INTRODUCTION**

Plaintiff Victoria Balbridge brought this action under 42 U.S.C. § 1983, alleging constitutional deprivations while being housed at Jackson County Jail as a pre-trial detainee.  Specifically, her amended complaint alleges that on December 4, 2005, Jackson County transported her from the Jackson County Jail to Foote Memorial Hospital and "while handcuffed to a hospital bed after a series of seizures, Ms. Baldridge was sexually assaulted by a deputy sheriff assigned to supervise her during her stay at Foote Hospital."  (Am. Compl. at ¶ 1.)  Plaintiff contends that Defendant

_____

[1]  The instant motion is brought by all Defendants except Defendant Tyler Jeffreys, who is represented by different counsel than the other Defendants.

Jeffreys digitally penetrated Plaintiff and forced her to perform oral sex on him. (*Id.*)

Plaintiff further contends that the remaining Defendants' "acts and omissions in failing to

protect Plaintiff from these assaults were a violation of Plaintiff's federal statutory and

constitutional rights." (*Id.*)

Defendants bring the instant motion, asserting that Plaintiff's causes of actions

are "solely based on the isolated criminal action committed by [Defendant Jeffreys],

while Plaintiff was being treated at Foote Hospital . . . after jail officials considered that

she may have suffered a stroke or seizure (in addition to withdrawing from Heroin) while

a pretrial detainee." (Defs.' Mot. at 1.) Defendants contend that Plaintiff cannot

establish a triable fact with respect to any cause of action other than that which is

asserted against Defendant Jeffreys.

Most, if not all, of the underlying facts of this case are not in dispute. There is no

dispute that Defendant Jeffreys and Plaintiff engaged in sexual activities while Plaintiff

was in Defendant Jeffreys's custody. Nor is there any dispute that, following the

incident, Defendant Jeffreys was fired, arrested, and convicted for criminal sexual

conduct in the second degree. (Defs.' Mot. at vii- viii; Pl.'s Resp. at 11.) Instead, the

parties' dispute focuses, primarily, on whether the sexual activity was forced or

consensual. Defendants contend that Jeffreys's conviction alone is not dispositive

because he was convicted under a Michigan criminal "statute which makes any sexual

activity between an officer of the law and a subject in his custody . . . illegal." (Defs.'

Reply at 2, n.4.)[2] Defendants assert that Plaintiff initiated the sexual activity for

_____

[2] Indeed, the relevant Michigan statue provides that a person is guilty of criminal
sexual conduct in the second degree when:

personal financial gain, while Plaintiff, citing Jeffreys's alleged history of sexually inappropriate behavior, contends that Jeffreys used his position to assault her.  These factual disputes will ultimately need to be resolved by a jury.  However, because Jeffreys is not a party to the instant motion for summary judgment, these factual disputes are largely irrelevant to the matter before the court.

Rather, the relevant inquiry in this motion is whether Plaintiff has identified sufficient facts to sustain a cause of action against Defendants Daniel, Luce, Stellingworth, Jackson County, and Jackson County Sheriff's Department.[3]  Plaintiff contends Defendants' policies and procedures regarding the oversight of a female inmate by a male officer constituted deliberate indifference to Plaintiff's safety. Defendants disagree, and argue that Plaintiff's injuries were caused by Jeffreys's unforeseen and isolated criminal activity for which they cannot be held liable as a matter of law.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to

---

That other person is a prisoner or probationer under the jurisdiction of a county for purposes of imprisonment or a work program or other probationary program and the actor is an employee or a contractual employee of or a volunteer with the county or the department of corrections who knows that the other person is under the county's jurisdiction.

Mich. Comp. Laws § 750.520c(1)(k).

[3]  Because Defendant Jeffreys is not a party to this motion, the court will refer to Defendants Daniel, Luce, Stellingworth, Jackson County, and Jackson County Sheriff's Department, collectively, as "Defendants."

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has

carried its burden of showing that the pleadings, depositions, answers to interrogatories,

admissions and affidavits in the record construed favorably to the non-moving party, do

not raise a genuine issue of material fact for trial, entry of summary judgment is

appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex*

*Corp. v. Catrett*, 477 U.S. 317 (1986)).

      Summary judgment is not appropriate when "the evidence presents a sufficient

disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 251-52 (1986).  The existence of some factual dispute, however, does not

defeat a properly supported motion for summary judgment; the disputed factual issue

must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks

whether reasonable jurors could find by a preponderance of the evidence that the

plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can

properly proceed to find a verdict for the party producing it, upon whom the *onus* of

proof is imposed.'").  A fact is "material" for purposes of summary judgment when proof

of that fact would have the effect of establishing or refuting an essential element of the

claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174

(6th Cir. 1984).

      In considering a motion for summary judgment, the court must view the facts and

draw all reasonable inferences from the admissible evidence presented in a manner

most favorable to the nonmoving party.  *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir.

2004) ("[W]e must determine 'not whether there is literally no evidence, but whether

there is any upon which a jury could properly proceed to find a verdict for the party

producing it upon whom the *onus* of proof is imposed.'") (citation omitted).  The court does not weigh the evidence to determine the truth of the matter, but must determine if the evidence produced creates a genuine issue for trial.  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III.  DISCUSSION

Plaintiff was arrested on November 29, 2005 for shoplifting and drug possession. (Pl.'s Resp. at 4.)  She contends that, on intake, her mental health history and history of abuse were not recorded.[4]  About a week after her placement at Jackson County Jail, Plaintiff began suffering from symptoms related to heroin and crack cocaine withdrawal, headaches, and seizures.  (Pl.'s Resp. at 4; Defs.' Reply at iii.)  There is no dispute that she was promptly taken to Foote Memorial Hospital for medical attention.  There is also no dispute that she was transported to the hospital by Deputy James Brazee, who was later relieved by Defendant Jeffreys.  (Defs.' Fact # 4; Defs.' Reply at iii.)  While being guarded by Jeffreys, according to Plaintiff, she was sexually assaulted.[5]   For the reasons discussed below, the court finds that, while Plaintiff can proceed to trial against Defendant Jeffreys, she has failed to proffer sufficient facts to create a triable issue of fact relating to any claim against the remaining Defendants.

---

[4]  According to Plaintiff, she has a long history of sexual abuse which makes her vulnerable to "sexual revictimization during incarceration."  (*See* Pl.'s Resp. at 2-4.)

[5]  Despite Defendants' vehement assertion that the "assault" was consensual, the court accepts Plaintiff's version of the incident for purposes of this summary judgment motion.

5

### A.  Jackson County Sheriff's Department

Defendants correctly argue that Defendant Jackson County Sheriff's Department is not a legal entity amenable to suit, and the court will grant Defendants' motion on that basis.  *See Rhodes v. McDannel,* 945 F.2d 117, 120 (6th Cir. 1991) ("[T]he Sheriff's Department is not a legal entity subject to suit." (citing *Kurz v. Michigan*, 548 F.2d 172, 174 (6th Cir. 1977)). [6]

### B.  Defendants Jackson County and Sheriff Heyns in his Offical Capacity[7]

To prevail on a claim brought under 42 U.S.C. § 1983, Plaintiff must prove that Defendants acted "under color of law" and that their conduct deprived Plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States.  42 U.S.C. § 1983; *Markva v. Haveman*, 317 F.3d 547, 552 (6th Cir. 2003).  In Plaintiff's complaint, she appeared to assert claims under the First, Fourth, Eighth, and Fourteenth Amendments, but at this point, she seems to be resting her claims on her rights to be secure in her person, whether asserted under the Fourth, Eighth, or

---

[6] Plaintiff unavailingly responded alleging that Defendants' answer to interrogatory #6 "identified the Jackson County Sheriff's Department as the responsible 'corporate entity'." Interrogatory #6 asked Defendants only to identify "the individuals and corporate entities that are *responsible for the operations of the Jackson County Jail*, the transport of inmates and supervision of inmates at Foote Memorial Hospital" (emphasis added), and, indeed, Defendants' answer correctly identified the Department as "responsible" for such *"operations."* The court can think of no way, however, in which Defendants could, from the vapor of an answer to an interrogatory, transform a non-entity into a legal entity. Plaintiff's response either misses the significance of the legal point entirely, or is an attempt to mislead the court.

[7] Plaintiff's action against Sheriff Heyns in his official capacity should be treated as an action against the County.  *See Hafer v. Melo,* 502 U.S. 21, 25 (1991); *see also Petty v. County of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that Petty's suit is against Karnes in his official capacity, it is nothing more than a suit against Franklin County itself.").

6

Fourteenth Amendments.[8]  Because Plaintiff asserts that the assault occurred not during her arrest but after, and while she was under custody as a pretrial detainee, her claim is properly characterized as a claim for a violation of the Fourteenth Amendment. It is well established that a pretrial detainee's Fourteenth Amendment right to due process is analogous to the Eighth Amendment's proscription of cruel and unusual punishment. *See Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992); *see also Miller v. Calhoun County,* 408 F.3d 803, 812 (6th Cir. 2005) ("Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well." (citations omitted)).[9]

The Eighth Amendment provides that "cruel and unusual punishments [shall not] be inflicted."  U.S. Const. amend. VIII.   Nonetheless, "[t]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind."  *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (quoting *Hudson v. McMillian*, 503 U.S. 1, 20 (1992)).  "[A] prison official cannot be found liable under the Eighth Amendment for denying a prisoner humane conditions of confinement unless the official knows of and disregards an *excessive* risk to inmate health or safety."  *Id.* (quoting *Farmer v. Brennan*, 511 U.S.

---

[8]  Plaintiff apparently has abandoned any claims against these Defendants under the First Amendment, as she has failed to produce any evidence, or even argue, that she suffered any adverse action in retaliation for engaging in a constitutionally protected activity.  *See Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999).

[9] For the sake of convenience, the court will simply discuss Plaintiff's claim as if it were in fact an Eight Amendment claim.

825, 837 (1994) (emphasis in original); *cf. Estelle v. Gamble*, 429 U.S. 97, 105 (1976)

(finding that genuine accidents which produce additional suffering do not violate the

Eighth Amendment to the Constitution)).  "Mere negligence or malpractice is insufficient

to establish an Eighth Amendment violation."  *Bowman v. Corrections Corp. of America,*

350 F.3d 537, 544 (6th Cir. 2003) (citing *Estelle*, 429 U.S. at 106 n. 14.  Instead,

> a prison official cannot be found liable under the Eighth Amendment for
> denying an inmate humane conditions of confinement unless the official
> knows of and disregards an excessive risk to inmate health or safety; the
> official must both be aware of facts from which the inference could be
> drawn that a substantial risk of serious harm exists, and he must also
> draw the inference.

*Miller v. Calhoun County,* 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Farmer*, 511 U.S.

at 837).

   Moreover, Plaintiff cannot rely on *respondeat superior* liability to hold Jackson

County liable under § 1983.  *See Monell v. New York City Dep't of Soc. Servs.*, 436

U.S. 658 (1978).  Rather, under *Monell* and its progeny, a county may be held liable

only (1) "when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury," *Monell*, 436 U.S. at 694, and (2) when there is an "affirmative

link between the policy and the particular constitutional violation alleged," *Oklahoma*

*City v. Tuttle*, 471 U.S. 808, 82 3(1985); *see also Petty v. County of Franklin, Ohio,*  478

F.3d 341, 347 (6th Cir. 2007).  Plaintiff must establish that the county's official policies

or customs (or lack thereof) were a "moving force" behind the deprivation of Plaintiff's

rights and arose as a result of "deliberate indifference" to her rights.  *See Doe v.*

*Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996).

"[I]n order to impose municipal liability a plaintiff bringing a § 1983 claim against a municipality must therefore identify the policy or custom that caused her injury." *Ford v. County of Grand Traverse,* 535 F.3d 483, 495 (6th Cir. 2008). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* (quoting *Board of County Comm'rs v. Brown,* 520 U.S. 397, 403-04 (1997)). Once the policy is identified, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Comm'rs,* 520 U.S. 397, 403-04 (1997)). As the Sixth Circuit has phrased it,

> The key inquiry thus becomes whether, in viewing the County's policy in the light most favorable to [Plaintiff], there was sufficient evidence for reasonable minds to find "a direct causal link" between the County's policy and the alleged denial of [Plaintiff's] right to adequate medical care. *See, e.g., Blackmore v. Kalamazoo County,* 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom.") (citing *Monell,* 436 U.S. at 694, 98 S.Ct. 2018); *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993) ( "[T]o satisfy the *Monell* requirements[,] a plaintiff must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." (internal quotation marks omitted)).

*Ford,* 535 F.3d at 497 (6th Cir. 2008).

Plaintiff contends that Defendants "knew or reasonably should have known their policies, or failure to promulgate policies, were likely to result in harm to Plaintiff, such that their failure to act can be construed as deliberate indifference to Plaintiff's safety." (Pl.'s Resp. at 15.) Specifically, Plaintiff contends that Defendants' "lack of policy to

protect against custodial sexual misconduct combined with the practice of allowing solo

male staff to supervise vulnerable female inmates without any supervision, monitoring

or prior training demonstrates their deliberate indifference to a known risk of harm to

Plaintiff resulting in her sexual assault by Defendant Jeffreys." (*Id.*)

Plaintiff argues that the County's failure is "out of step with operating procedure

and standards for jails and prisons."  (*Id.* at 5.)  To support this assertion, Plaintiff

submits expert testimony, rules promulgated by the Michigan Department of

Corrections, reports issued by the Bureau of Justice, and standards and

recommendations issued by the National Prison Commission.  (*See* Pl.'s Resp. at 4-6,

15.)  Even if the County's failure to provide for a specific procedure for addressing off-

site monitoring of female inmates is "out of step" with the majority of regulations,

inconsistent with Michigan regulations, or not in compliance with the model regulations,

this does not mean that the failure amounts to a *constitutional* violation.  *See Crocker v.*

*County of Macomb,* 119 F. App'x 718, 725 (6th Cir. 2005) (citing *Roberts v. City of Troy*,

773 F.2d 720, 723 (6th Cir.1985) (quoting *Davis v. Scherer*, 468 U.S. 183 (1984)) ("The

mere failure to comply with a state regulation is not a constitutional violation.")).  The

proper focus is not on what the policy could have been, ideally, but what the policy

actually was.  The Constitution, of course, does not require perfection.  *See Graham v.*

*County of Washtenaw,* 358 F.3d 377, 384 (6th Cir. 2004) ("Graham's argument is

essentially that the County's policy did not, in this particular case, adequately address

Mr. Graham's specific medical needs. That may be so.  However, '[t]he fact that

alternative procedures might have better addressed [a prisoner's] particular needs does

not show that the [County was] deliberately indifferent to his medical needs.'" (citation and footnote omitted)).

Moreover, contrary to Plaintiff's attempts to cast the situation otherwise, the County's policies or customs are not completely silent on male supervision or interaction with a female inmate.  Plaintiff admits that Jackson County maintains a policy or procedure requiring female inmates to be processed and housed separately and requiring that a female officer is always present in the jail.  (Pl.'s Resp. at 5.)  Plaintiff also admits that the County requires that if a "male officer is transporting a female inmate alone, they [sic] must call in their time of departure and mileage and again report arrival time and mileage, out of concern for possible misbehavior."  (*Id.* at 5.)

Additionally, it is undisputed that it is against Michigan law for police officers to engage in sexual relations with inmates in their custody.  Mich. Comp. Laws § 750.520c(1)(k).  The Jackson County's "General Rules of Conduct" (the "General Rules") further contain specific provisions prohibiting the behavior in which Jeffreys engaged.  The General Rules require that "[d]epartmental members shall obey all federal, state and local laws as well as rules, regulations, directives and orders issued by the department."  (Defs.' Ex. 10, § II.B.2.a.)  The General Rules also provide that "[d]epartmental members shall take care to observe and respect the civil rights of citizens as the term "civil rights" is commonly understood."  (*Id.* at § II.C.1.)  Further, departmental members are restricted from using their official position to obtain "privileges not otherwise available to them."  (*Id.* at §  II.C.3.)  Departmental members are prohibited from "associations or dealings" with persons who are under criminal investigation (*id.* at § II.C.3); from engaging in personal activities which would cause

11

them to neglect their duties (*id.* at § II.C.8.f); and from fraternizing with jail inmates

during or subsequent to their incarceration (*id.* at § II.C.18.b).  The General Rules also

provide that "[d]epartmental members shall not engage in  any normally legitimate act

which, when performed on duty, may reflect discredit upon the Department."  (*Id.* at §

II.C.8.l.)  Finally, departmental members are specifically directed to

> conduct themselves at all times, both on-duty and off-duty, in such a
> manner as to reflect most favorably on the Department.  Conduct
> unbecoming a departmental member shall include that which brings the
> Department into disrepute or reflects discredit upon the member as a
> member of the Department or that which impairs the operation or
> efficiency of the Department or the member.

(*Id.* at §  II.C.8.n.)  As a matter of law, these policies specifically forbade the conduct

which caused Plaintiff's injuries.  Whether the unlawful sexual acts were consensual or

forced, Defendant Jeffreys's conduct was in violation of the County's policies.

Plaintiff attempts to assert a constitutional violation in Jackson County's failure to

specifically proscribe the exact situation at issue here.  Plaintiff's grievance is that

Jackson County has no policies or procedures in place to address supervision of female

inmates off-site.  (Pl.'s Resp. at 15.)  Based on the facts submitted to the court,

however, the court finds as a matter of law that no further specificity was required.  In

order to impose liability, "the risk of a constitutional violation arising as a result of the

inadequacies in the municipal policy must be 'plainly obvious.'"  *Gregory v. City of

Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006) (citation omitted).  In this case, there is

no evidence of any prior complaint of Defendant Jeffreys's behavior, nor indeed is there

any evidence of a pattern of complaints about *any* deputy.  *Contra Tafoya v. Salazar*,

516 F.3d 912 (10th Cir. 2002) (cited by Plaintiff, Pl.'s Resp. at 16) (finding triable issue

because Sheriff should have been on notice of inappropriate behavior based on

previous assaults and previous lawsuit); *Kahle v. Leonard*, 477 F.3d 544 (8th Cir. 2007) (cited by Plaintiff, Pl.'s Resp. at 16-17) (finding triable issue where jury could find that prison official knew or should have known of the assault). Rather, in order to find a triable issue, the court must find that any time a male guard supervises a female inmate, or a female inmate with a known or unknown history of sexual abuse, that inmate is at risk of being assaulted by the prison guard. Even more, the court must find that a reasonable jury could conclude that the risk is so great that it constitutes deliberate indifference for a municipality to not have a policy specifically prohibiting this conduct while guarding off-site. The court cannot sustain this position.

The Tenth Circuit has rejected a similar argument in a well-supported, and well-stated opinion:

> [I]n order to determine that a constitutional violation could have occurred, we must conclude that a male guard having sole custody of a female inmate creates such a risk to her safety that it constitutes a violation of the Eighth Amendment's cruel and unusual punishment clause. We are unable to do so.
>
> We . . . note that we were not able to locate any decisions which hold that guards of the same gender as the inmates are required by the Eighth Amendment. The majority of cases which address gender in the prison setting focus on the right to privacy. These cases often must balance the inmates' right to privacy and the guards' right to not be discriminated against in employment. *See, e.g., Berl v. County of Westchester*, 849 F.2d 712 (2d Cir. 1988) (county liable under Title VII for refusing to consider two male guards for promotion to female unit of prison); *Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1982) (right to privacy violated where guards regularly watch inmates of the opposite sex engaged in personal activities such as undressing); *Forts v. Ward*, 621 F.2d 1210 (2d Cir. 1980) (male guards not enjoined from duties requiring observation of female inmates where privacy rights of female inmates could be protected); *Edwards v. Dep't of Corrections*, 615 F.Supp. 804 (M.D. Ala. 1985) (illegal discrimination where male guard not appointed shift commander at women's prison due to his gender). This conflict "has normally been resolved by attempting to accommodate both interests through adjustments in scheduling and job responsibilities for the guards."

13

> *Smith v. Fairman*, 678 F.2d 52, 55 (7th Cir. 1982), cert. denied, 461 U.S.
> 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983).

*Hovater v. Robinson,* 1 F.3d 1063, 1066-67 (10th Cir. 1993).  The court agrees with this

reasoning, as well as that of the Western District of Virginia, which held in an

unpublished case:

> The Court finds a policy or custom of transporting female inmates alone
> with male guards is not unconstitutional, because the majority of men, and
> the majority of prison guards, are not rapists merely waiting for an
> opportunity to assault a woman. This is not to say that this policy is wise,
> or that a different policy would not have protected the Plaintiff's undeniable
> right to bodily integrity more effectively. But absent a showing that
> transportation by a male guard alone is tantamount to a sentence of rape
> for any women unfortunate enough to suffer it, the policy cannot be said to
> have caused the rape. Rather, the policy failed to prevent the rape, which
> is inadequate as a matter of law to support liability.  *See Milligan*, 743 F.2d
> at 230.

*Doe v. Cunningham,* No. 3:06-CV-00019,  2006 WL 2819600, *2 (W.D. Va. Sept. 28,

2006) (citing *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984)); *see*

*also Heckenlaible v. Virginia Peninsula Reg'l Jail Auth.*, 491 F. Supp. 2d 544, 555 (E.D.

Va. 2007) (agreeing with the reasoning of *Doe*, but finding that such a policy may

nonetheless be negligent under state law)).

The court finds as a matter of law that the Jackson County's policies, or failure to

promulgate a specific policy governing the off-site, cross-gender supervision does not

constitute deliberate indifference.  Based on the facts presented to the court, Plaintiff

could not establish that the County's official policies or customs (or lack thereof) were a

"moving force" behind the deprivation of Plaintiff's rights and arose as a result of

"deliberate indifference" to her rights.  *See Doe*, 103 F.3d at 508.

Plaintiff also alleges that the County should be held liable because it failed to

adequately train its officers as to the level of sexual contact they could have with

14

inmates or with respect to sexual misconduct or supervision of female inmates.  (Pl.'s

Resp. at 11.)   In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court held

that

> the inadequacy of police training may serve as the basis for § 1983
> liability *only where the failure to train amounts to deliberate
> indifference* to the rights of persons with whom the police come into
> contact . . . . Only where a failure to train reflects a *'deliberate' or
> 'conscious' choice by a municipality*--a 'policy' as defined by our
> prior cases--can a city be liable for such a failure under § 1983.

*Id.* at 388-89 (emphasis added).   "Deliberate indifference is a stringent standard of

fault, requiring proof that a municipal actor disregarded a known or obvious

consequence of his action."  *Bd. of County Comm'r*, 520 U.S. at 410.

Plaintiff has failed to create a triable issue on this "stringent" standard of fault.

First, to the extent Plaintiff bases her claim on Defendant Jeffreys's lack of individual

training, her claim must fail.  The focus of the court's inquiry is on the training program

itself and testimony that shows individual officers did not have specific training, standing

alone, is insufficient to defeat summary judgment.  *City of Canton,* 489 U.S. at 390-91

("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten

liability on the city, for the officer's shortcomings may have resulted from factors other

than a faulty training program.").  Moreover, it is not enough for a plaintiff "to show that

his injury could have been avoided if the officer had had more or better training."  *Mayo

v. Macomb County*, 183 F.3d 554, 558 (6th Cir. 1999).[10]

Rather, "[t]o establish liability under *City of Canton,* 'the plaintiff must prove . . .

that the training program at issue is inadequate to the tasks that officers must perform;

---

[10] In light of Plaintiff's allegations that Defendant Jeffreys sexually assaulted her,
it is difficult to imagine how any lack of training led to a violent, criminal attack.

15

that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury.'" *Russo v. City of Cincinnati,* 953 F.2d 1036, 1046 (6th Cir. 1992) (quoting *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir.1989)).   In this case, the court is somewhat at a loss to understand Plaintiff's theory on this claim.   Plaintiff contends that

> [t]he level of training given to deputies assigned to supervise inmates is also in dispute.  Defendant Jeffreys stated he was never aware and never advised that sexual contact with an inmate was illegal and did not receive any training on sexual misconduct or supervision of female inmates. (Deposition of Defendant Jeffreys, 07/22/08, Exhibit 12).  Defendants have produced no evidence of any such training.  There was no training on privacy issues or reporting sexual assaults.  While another deputy testified that he believes Defendant Jeffreys should have know[n] these things, Defendant County has no formal training manual and no documentation of training has been provided related to issues of sexual harassment prohibition or supervision of female inmates.  All of the training is given by the County.

(Pl.'s Resp. at 11.)  Plaintiff appears to be arguing that Defendant Jeffreys was not specifically trained to refrain from sexually assaulting a female inmate, but such an argument seems nonsensical to the court.[11]  Moreover, in light of the policies addressed above, such an argument is also untenable.

In examining *City of Canton*, the Sixth Circuit has noted

> two types of situations that would justify a conclusion of deliberate indifference in the failure to train police officers.  One is failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction.  For example, the Court indicated that lack of instruction in the use of firearms or in the use of deadly force could

---

[11]  To the extent that Plaintiff argues, contrary to her theory of liability, that deputies were not trained that it was illegal to engage in *consensual* sexual relations with an inmate, such a theory would not state a claim under § 1983.  *See generally Burris v. Thorpe,* 166 F. App'x 799, 802-03 (6th Cir. 2006) ("[W]hen Thorpe was engaging in [consensual] sexual intercourse with Burris, even when he was on duty and in uniform, he was not acting under color of state law.").

> constitute "deliberate indifference."  A second type of situation justifying a
> conclusion of deliberate indifference is where the city fails to act in
> response to repeated complaints of constitutional violations by its officers.

*Brown v. Shaner,* 172 F.3d 927, 931 (6th Cir. 1999) (internal citations omitted).  The

facts in this case, viewed in a light most favorable to Plaintiff, do not support the

presence of either situation.  As discussed above, the County's policies were sufficient

to proscribe the conduct which caused Plaintiff's injuries.  Moreover, there is nothing in

the record to support a jury finding that it was foreseeable that a male guard would

sexually assault a female inmate while supervising her off-site.  Nor is there any

evidence that the County failed to train its employees in response to repeated (or

singular) complaints of sexual misbehavior.  *Contra Leach v. Shelby County Sheriff,* 891

F.2d 1241, 1248 (6th Cir. 1989) ("Given the district court's finding of deliberate

indifference by the Sheriff in that at least 14 other paraplegics had received similar

deplorable treatment, it is fair to say that the need for more adequate supervision was

so obvious and the likelihood that the inadequacy would result in the violation of

constitutional rights was so great that the County as an entity can be held liable here for

the extent of Leach's determined damages.").

Plaintiff cannot show that "in light of the duties assigned to specific officers or

employees the need for more or different training is so obvious, and the inadequacy so

likely to result in the violation of constitutional rights, that the [County] can reasonably

be said to have been deliberately indifferent to the need."  *City of Canton,* 489 U.S. at

390.  Indeed, allowing the imposition of municipal liability in this case is precisely the

danger which the Supreme Court warned against in *City of Canton*.  Specifically, the

Supreme Court explained the reason for imposing a high hurdle for municipal liability:

> To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983.  In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.  *See Oklahoma City v. Tuttle*, 471 U.S., at 823, 105 S.Ct. at 2436 (opinion of Rehnquist, J.). Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities-a result we rejected in *Monell*, 436 U.S., at 693-694, 98 S.Ct., at 2037.  It would also engage the federal courts in an endless exercise of second-guessing municipal employee-training programs.  This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism. *Cf. Rizzo v. Goode*, 423 U.S. 362, 378-380, 96 S.Ct. 598, 607-608, 46 L.Ed.2d 561 (1976).

*Id.* at 391-92.  It is perhaps conceivable that the County may have done additional or different training to somehow prevent Plaintiff's injury.[12]  The court, however, will not second guess the County or focus on what could have been done to prevent the injury. The court's inquiry ends because Plaintiff has not shown that the County's training program was inadequate, or that such inadequacy resulted from any deliberate indifference.  *Russo,* 953 F.2d at 1046.  The County's summary judgment motion will therefore be granted.

## C.  Defendants Stellingworth and Luce; Sheriff Heyns in his Individual Capacity

Plaintiff also asserts claims against Defendants Luce and Stellingworth, and against Sheriff Heyns in his individual capacity. Plaintiff's claims against Defendant Heyns are based on his involvement in promulgating and implementing policies and procedures for supervision of the inmates at Jackson County Jail.  (Pl.'s Resp. at 17.) Because the court has found no constitutional infirmity in those policies, the court will

---

[12]Given the nature of Plaintiff's injury, however, the likelihood of this position is extremely slim.

also reject Plaintiff's claims based on implementing those policies.  To the extent Plaintiff bases her claims against Henys on his supervisory role as Sheriff, the court will also reject those claims.  "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability."  *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005).

Plaintiff alleges that Heyns "knew or should have known that Plaintiff belonged to a class of particularly vulnerable inmates at risk for sexual assault in light of her prior history" and that he "knew or should have known about the substantial risk of sexual abuse of women prisoners by male staff when left in long term one on one unmonitored situations."  (Pl.'s Resp. at 18.)  Plaintiff does not produce any evidence, however, sufficient to create a triable issue with respect to how Defendant Heyns "should have known" that Plaintiff in particular was at risk of sexual assault by Defendant Jeffreys in particular.   Plaintiff has not alleged or shown that Heyns committed any unconstitutional acts or somehow acquiesced in the conduct of Jeffreys, *see Grinter v. Knight,* 532 F.3d 567, 575-76 (6th Cir. 2008), and he is therefore entitled to summary judgment.

Further, it is undisputed that at the time of the incident Defendant Luce was Commander of the Jail Division, and had no supervisory responsibility over Defendant Jeffreys.  During her deposition, Plaintiff testified that she did not know of anything improper Defendant Luce may have done on the day she suffered her seizure or while she was at the hospital.  (Pl.'s Dep. at 68-69, Defs.' Ex. 7.)  In response to Defendants' motion, Plaintiff asserts generally that claims against Luce are "viable based upon his position as commander in charge of the jail, who failed to take any steps to limit [Plaintiff's] transfer and supervision by a sole male officer."  (Pl.'s Resp. at 18.)   This

19

assertion, especially without supporting facts, is legally insufficient to present a triable issue with respect to Luce's liability.

Although Luce was a supervisor at the jail, the Sixth Circuit has liability under § 1983 will not be imposed solely upon the basis of *respondeat superior*. Instead,

> [t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.*

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) (emphasis in original) (quotations and citations omitted). Here, Plaintiff's theory of liability against Luce is too tenuous to proceed to a jury. She alleges that Luce should not have allowed Jeffreys to supervise Plaintiff but does not provide any facts to support any portion of this theory. There is no evidence that it was Luce's responsibility to order the transfer or supervision of Plaintiff, that he actually ordered Jeffreys to supervise Plaintiff or, even if he did, that he had any reason to believe such an order would place Plaintiff in danger. Moreover, there is no evidence that Defendants had any knowledge that Defendant Jeffreys presented any risk of harm to Plaintiff, or to any other inmate. There is no evidence that prior to this incident, the County received any complaints suggesting Defendant Jeffreys had engaged in any sexual misconduct or had otherwise abused his position to obtain sexual favors.[13]

---

[13] After the incident, Defendants learned of two women who claimed that Defendant Jeffreys had inappropriate contact with them while on duty. (*See* Defs.' Fact # 51.) Danielle Giles, a phlebotomist at Foote Hospital, claimed that she had been assaulted by Jeffreys, and the boyfriend of Pamela Heim complained that Jeffreys had sexual relations with Heim while on duty. (Defs.' Fact ## 52-58.)

Similarly, Plaintiff's counsel's bare assertion that Defendant Stellingworth "specifically assigned Defendant Jeffreys, an untrained officer to oversee a female inmate, without any supervision, monitoring or even requiring check[-]ins or review of his behavior" (Pl.'s Mot. at 18) is not enough to survive summary judgment. First, as with Defendant Luce, Plaintiff has failed to specifically identify the facts to support this assertion. Even accepting the veracity of this unsupported assertion, assigning Jeffreys to oversee Plaintiff is not enough to impose liability under § 1983. In order to impose liability on the supervisors of Jeffreys, "the supervisors must have actively engaged in unconstitutional behavior." *Gregory v. City of Louisville,* 444 F.3d 725, 751 (6th Cir. 2006). "[L]iability must lie upon more than a mere right to control employees and cannot rely on simple negligence." *Id.*

At most, Plaintiff has alleged (without supporting facts) that Defendant Stellingworth may have been negligent in assigning Jeffreys to oversee Plaintiff. This is simply not enough to meet Plaintiff's burden. As with Defendants Heyns and Luce, Plaintiff has failed to establish a triable fact that Stellingworth "at least implicitly, authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). At heart, Plaintiff's claims against all three of the these individual Defendants amounts to an assertion that the three Defendants are liable for their "role" in assigning or allowing a male officer to guard a female inmate unsupervised. The court is again persuaded by the Tenth's Circuit's reasoning in *Hovater*:

> Sheriff Hill had no knowledge that Mr. Robinson was a threat to the female inmates. Any known harm could stem only from the mere fact of Mr. Robinson's gender. To find a harm present in these circumstances would, in effect, require the conclusion that every male guard is a risk to the

21

> bodily integrity of a female inmate whenever the two are left alone. There
> is absolutely no evidence in this record to support that conclusion. A
> constitutional violation may not be established by a reliance upon
> unsupported assumptions.  Had Sheriff Hill possessed information that Mr.
> Robinson as an individual posed a threat to the safety of female inmates,
> our decision would be different.  We hold that Ms. Hovater has failed to
> meet her burden of establishing a constitutional violation.

*Hovater,* 1 F.3d at 1068 (footnote omitted).  Here, as in *Hovater*, the court refuses to

hold that every male guard poses a threat to the safety of female inmates, or even to

female inmates with prior sexual abuse such that other officers are deliberately

indifferent if they fail to recognize that "risk."  Plaintiff has failed to present sufficient

evidence that these Defendants had the requisite personal involvement in order to incur

personal liability.  *Miller,* 408 F.3d at 817.  Defendants' motion will therefore be granted

with respect to Defendants Heyns, Luce, and Stellingworth.

## IV.  CONCLUSION

IT IS ORDERED that Defendants' motion for summary judgment [Dkt. # 39] is

GRANTED.


      S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated:  February 5, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 5, 2009, by electronic and/or ordinary mail.


      S/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522